**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

JOSEPH CAGLE, JR.

      **Plaintiff,**             Case No. 18-cv-12041

  v.                                  **District Judge Gershwin A. Drain**

**COMMISSIONER OF**           **Magistrate Judge Mona K. Majzoub**
**SOCIAL SECURITY,**

      **Defendant.**
_____/

## REPORT AND RECOMMENDATION

Plaintiff Joseph Cagle, Jr. seeks judicial review under 42 U.S.C. § 405(g) of Defendant Commissioner of Social Security's determination that he is not entitled to benefits under the Social Security Act. (Docket no. 1.) Before the Court are Plaintiff's Motion for Summary Judgment (docket no. 13) and Defendant's Motion for Summary Judgment (docket no. 16). This matter has been referred to the undersigned for determination of all non-dispositive motions pursuant to 28 U.S.C. § 636(b)(1)(A) and issuance of a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and (C). (Docket no. 3.) Having reviewed the pleadings, the Court dispenses with a hearing pursuant to Eastern District of Michigan Local Rule 7.1(f)(2) and issues this Report and Recommendation.

**I.     RECOMMENDATION**

For the reasons that follow, it is recommended that Plaintiff's Motion for Summary Judgment (docket no. 13) be **DENIED**, that Defendant's Motion for Summary Judgment (docket no. 16) be **GRANTED**, and that the case be dismissed in its entirety.

## II. PROCEDURAL HISTORY

Plaintiff applied for Supplemental Security Income ("SSI") on March 30, 2016, alleging that he has been disabled since April 12, 1999. (TR 151–56.) The Social Security Administration initially denied Plaintiff's claims on June 1, 2016. (TR 89–105.) On October 10, 2017, Plaintiff appeared with counsel and testified at a hearing before Administrative Law Judge ("ALJ") Anthony R. Smereka. (TR 25–69.)

On November 24, 2017, the ALJ issued an unfavorable decision on Plaintiff's claims. (TR 9–21.) Plaintiff requested review by the Appeals Council, which was denied on May 3, 2018. (TR 1–3.) On June 29, 2018, Plaintiff commenced this action for judicial review. (Docket no. 1.) The parties filed cross motions for summary judgment, which are currently before the Court. (Docket no. 13; docket no. 16.)

## III. HEARING TESTIMONY AND MEDICAL EVIDENCE

Plaintiff sets forth a brief procedural history of this matter as well as a short summary of his medical issues. (Docket no. 13, pp. 8–14.) In addition, the ALJ summarized Plaintiff's medical record (TR 14–19), and Defendant adopted the ALJ's recitation of the facts (docket no. 16, p. 4). Having conducted an independent review of Plaintiff's medical record and the hearing transcript, the undersigned finds that there are no material inconsistencies among these recitations of the record. Therefore, in lieu of re-summarizing this information, the undersigned will incorporate the above-cited factual recitations by reference and will also refer to the record as necessary to address the parties' arguments throughout this Report and Recommendation.

## IV. ADMINISTRATIVE LAW JUDGE'S DETERMINATION

The ALJ determined that Plaintiff performed substantial gainful activity in 1998, but had undergone 12-month period(s) without performing substantial gainful activity. (TR 14.) In

addition, the ALJ found that Plaintiff had the following severe impairments: "schizophrenia with substance abuse; chronic back pain; [status-post] fracture of the right wrist; and recent left tibia fracture with open reduction internal fixation." (TR 14.) Nevertheless, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id*.) The ALJ determined that Plaintiff had the Residual Functional Capacity ("RFC") to perform light work as defined in 20 C.F.R. 404.1567(b), subject to the following non-exertional limitations:

- Plaintiff cannot stand or walk more than two hours in an eight-hour workday.
- Plaintiff can lift no more than fifteen pounds.
- Plaintiff cannot be exposed to hazards, including work at unprotected heights or around dangerous, moving machinery.
- Plaintiff cannot climb any ladders, ropes, or scaffolds.
- Plaintiff can perform no more than occasional climbing of ramps or stairs.
- Plaintiff can perform no more than occasional balancing, stooping, kneeling, or crouching.
- Plaintiff cannot crawl.
- Plaintiff cannot drive in the course of employment
- Plaintiff cannot be exposed to vibration.
- Plaintiff cannot perform constant handling or fingering with the right, dominant hand.
- Plaintiff is restricted to unskilled work, meaning the ability to understand, carry out, and remember simple instructions, to respond appropriately to supervision, coworkers, and usual work situations, and to deal with changes in a work setting.
- Plaintiff needs a structured work environment.
- Plaintiff cannot work with the general public.
- Plaintiff can have no more than occasional contact with coworkers and supervisors.

- Plaintiff cannot perform fast paced production work where the pace is set by others.
- Plaintiff cannot perform work that involves calculation or math.

(TR 16.) Based on this determination, the ALJ posed a hypothetical to the Vocational Expert ("VE"), who testified that a person with Plaintiff's RFC could perform the requirements of jobs that exist in significant numbers in the national economy, including inspector, scrap sorter, and folder. (TR 20.) Accordingly, the ALJ concluded that Plaintiff has not been under a disability, as defined in the Social Security Act, since the application date. (*Id*.)

## V.   LAW AND ANALYSIS

### A.   Standard of Review

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's final decisions. Judicial review of the Commissioner's decisions is limited to determining whether his findings are supported by substantial evidence and whether he employed the proper legal standards. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is more than a scintilla but less than a preponderance; it is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Walters*, 127 F.3d at 528. It is not the function of this Court to try cases *de novo*, resolve conflicts in the evidence, or decide questions of credibility. *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole. *See Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). If the Commissioner's decision is

supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *See Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts"). "But '[a]n ALJ's failure to follow agency rules and regulations denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record.'" *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 374 (6th Cir. 2013) (quoting *Cole v. Astrue,* 661 F.3d 931, 937 (6th Cir. 2011)).

## B. Framework for Social Security Determinations

Plaintiff's Social Security disability determination was made in accordance with a five-step sequential analysis. In the first four steps, Plaintiff was required to show that:

(1) Plaintiff was not presently engaged in substantial gainful employment; and

(2) Plaintiff suffered from a severe impairment; and

(3) the impairment met or was medically equal to a "listed impairment;" or

(4) Plaintiff did not have the residual functional capacity (RFC) to perform relevant past work.

*See* 20 C.F.R. § 404.1520(a)-(f). If Plaintiff's impairments prevented Plaintiff from doing past work, the Commissioner, at step five, would consider Plaintiff's RFC, age, education, and past work experience to determine if Plaintiff could perform other work. If not, Plaintiff would be deemed disabled. *See id.* at § 404.1520(g). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her*, 203 F.3d at 391. To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [Plaintiff] has the vocational qualifications to perform specific jobs."

*Varley v. Sec'y of Health and Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987). This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question, "but only 'if the question accurately portrays [Plaintiff's] individual physical and mental impairments.'" *Id.* (citations omitted).

**C. Analysis**

Plaintiff contends that the ALJ erred by determining that he does not meet or medically equal Listing 12.03 of 20 C.F.R. Part 404, Subpart P, Appendix 1. (Docket no. 13, pp. 15–26.) In addition, Plaintiff asserts that the ALJ erred by finding that Plaintiff could perform the requirements of the inspector, scrap sorter, and folder positions. (*Id.* at 27–28.)

*1. Listing 12.03*

Plaintiff alleges that the ALJ "lacked substantial evidence to find that [he] did not meet Listed Impairment 12.03, Schizophrenia Spectrum and Other Psychotic Disorders." (Docket no. 13, p. 16.)

Listing 12.03, Schizophrenia Spectrum and Other Psychotic Disorders, is met by medical documentation of one of the following:

1. delusions or hallucinations;
2. disorganized thinking (speech); or
3. grossly disorganized behavior or catatonia;

in conjunction with an extreme limitation of one, or a marked limitation of two, of the following areas of mental functioning:

1. understand, remember, or apply information;
2. interact with others;
3. concentrate, persist, or maintain pace;
4. adapt or manage oneself.

20 C.F.R. § Pt. 404, Subpt. P, App. 1.

6

The ALJ determined that Plaintiff had only moderate limitations in his ability to interact with others and to adapt or manage himself. (TR 15–16.) The ALJ also found that Plaintiff had only moderate limitations in his ability to understand, remember or apply information and to concentrate, persist, or maintain pace. (*Id.*) Accordingly, the ALJ concluded that Plaintiff did not meet the "paragraph B" criteria of Listing 12.03. (*Id.*)

Plaintiff asserts that he has marked limitations in his ability to interact with others and adapt or manage himself. (Docket no. 13, p. 16.) As discussed more fully below substantial evidence supports the ALJ's determination that Plaintiff has only moderate limitations in these areas.

> The Social Security Administration defines "interact with others" as follows:
>
> This area of mental functioning refers to the abilities to relate to and work with supervisors, co-workers, and the public. Examples include: cooperating with others; asking for help when needed; handling conflicts with others; stating own point of view; initiating or sustaining conversation; understanding and responding to social cues (physical, verbal, emotional); responding to requests, suggestions, criticism, correction, and challenges; and keeping social interactions free of excessive irritability, sensitivity, argumentativeness, or suspiciousness. These examples illustrate the nature of this area of mental functioning. We do not require documentation of all of the examples

20 C.F.R. § Pt. 404, Subpt. P, App. 1. "Adapt or manage oneself" is defined as:

> This area of mental functioning refers to the abilities to regulate emotions, control behavior, and maintain well-being in a work setting. Examples include: Responding to demands; adapting to changes; managing your psychologically based symptoms; distinguishing between acceptable and unacceptable work performance; setting realistic goals; making plans for yourself independently of others; maintaining personal hygiene and attire appropriate to a work setting; and being aware of normal hazards and taking appropriate precautions. These examples illustrate the nature of this area of mental functioning. We do not require documentation of all of the examples.

*Id.* And a "marked limitation" is present where the applicant's "functioning in [a given] area independently, appropriately, effectively, and on a sustained basis is seriously limited. *Id.*

Applying these definitions, the ALJ cited the consulting physician's observation that Plaintiff was "very pleasant, friendly, and had good eye contact." (TR 250.) The ALJ also noted that Plaintiff could "manage his psychiatric conditions with appropriate treatment." (TR 16.) In support, the ALJ cited Exhibit 7F, in which Plaintiff's doctors described his attitude and behavior as cooperative or within normal limits, his mood as euthymic or within normal limits, and his affect as within normal limits. (TR 324, 327, 330, 333, 336, 339, 342, 345). The ALJ also observed that Plaintiff had "repeatedly shown intact memory, orientation, and at least fair judgment." (TR 18 (citing TR 234, 250.).)

In addition, the ALJ relied on Plaintiff's testimony and that of his parents. (TR 15.) Plaintiff's father stated that Plaintiff "goes out daily to visit friends" and gardened as a hobby. (TR 176–82.) Plaintiff testified that he spends time with others about once per week and stated to one of his doctors that he had "no major problems interacting with people." (TR 188, 324.)

Plaintiff outlines significant evidence to the contrary. (Docket no. 13, pp. 17–23.) But the Court must affirm a decision supported by substantial evidence even if substantial evidence also supports the opposite conclusion. *See Her*, 203 F.3d at 389–90. Accordingly, the ALJ did not err by concluding that Plaintiff does not meet Listing 12.03.

### 2. Ability to Perform SGA

Plaintiff also contends that the ALJ erred by concluding that he could perform the requirements of the inspector, scrap sorter, and folder positions. (*Id.* at 27–28.) As Plaintiff observes, the VE testified that someone with Plaintiff's RFC could *not* meet the requirements of those jobs. (TR 66.) However, the VE proceeded to testify that someone with Plaintiff's RFC could perform the requirements of three different jobs: finisher, stone-setter, and taper. (*Id.*) Accordingly, the ALJ's mistake is harmless error. *See Rabbers v. Comm'r Soc. Sec. Admin.*, 582

F.3d 647, 654–55 (6th Cir. 2009) ("[W]e review decisions of administrative agencies for harmless error.").

## VI. CONCLUSION

For the reasons stated herein, it is recommended that Plaintiff's Motion for Summary Judgment (docket no. 13) be **DENIED**, that Defendant's Motion for Summary Judgment (docket no. 16) be **GRANTED**, and that the case dismissed in its entirety.

### REVIEW OF REPORT AND RECOMMENDATION

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Rule 72.1(d)(2) of the *Local Rules of the United States District Court for the Eastern District of Michigan*, a copy of any objection must be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated: July 29, 2019        s/ Mona K. Majzoub
                                         MONA K. MAJZOUB
                                         UNITED STATES MAGISTRATE JUDGE

## **PROOF OF SERVICE**

       I hereby certify that a copy of this Report and Recommendation was served upon counsel of record on this date.

Dated: July 29, 2019        s/ Leanne Hosking
                                         Case Manager